DAVIES & DAVIES *v.* PATTERSON.

Opinion delivered June 24, 1918.

1. ATTORNEY AND CLIENT—RIGHT OF CLIENT TO SETTLE LITIGATION.— An attorney has a lien for his fees which can not be defeated by any settlement of the parties litigant, before or after final judgment or order; but an attorney can not compel his client to continue litigation, and the client may dismiss or settle the cause of action without consulting his attorney.

2. ATTORNEY AND CLIENT—AGREEMENT AS TO FEES.—A. employed B. to represent him in the collection of certain claims against certain insurance companies, the agreement providing that B. receive a fee of $100 for his services, at all events, but in the event of a suit B. was to receive a contingent fee, the amount being dependent upon a recovery in favor of A. in a greater sum than that which the insurance companies had offered to pay. B. brought suits, but A. settled privately with the companies for a sum less than the amount demanded by the suits, and less than the amount which the insurance companies had offered to pay. *Held*, under the law the companies would not have been liable for attorney's fees had the suits been prosecuted to final judgment, and therefore B. could not recover from A. more than $100 and costs paid for him.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*Davies & Davies, pro se.*

1. The matter in controversy in this suit was settled in 201 S. W. 504. The directed verdict is grievously wrong, and contrary to that decision.

2. The question should have been submitted to a jury. 140 Pac. 439; 57 Ark. 461; 38 Am. St. 254. Under the contract appellants were entitled to recover. We were not allowed to prove the services rendered nor their value.

3. The court erred in overruling the demurrer and in not sustaining the motion to dismiss. Kirby & Castle's Digest, § § 1078, 7809.

4. Numerous errors were made in ruling upon the evidence, which were duly excepted to.

### STATEMENT OF FACTS.

This action was instituted by the appellee, plaintiff below, against the Stuyvesant Insurance Company on a policy of fire insurance. It was alleged that the plaintiff made proof of loss and that the insurance company admitted its liability on the policy in the sum of $847.20 which the plaintiff was willing to accept and had demanded payment thereof but the company had refused to pay the same. The company answered admitting its liability, but alleged that it issued its draft payable to the plaintiff; that the draft was delivered to Davies & Davies, plaintiff's attorneys, who were then in possession of the same and who declined to surrender the same, that the company was ready and willing to pay the draft but that same was negotiable paper and that Davies & Davies claimed a personal interest in the draft which prevented the issuance of a duplicate and canceling the outstanding draft.

The court ordered that Davies & Davies be made parties defendant in the action and that the insurance company pay the sum of $847.20 into court, all of which was done.

Davies & Davies filed what they designated their answer and interplea in which they set up that they had a lien on the draft in question in the sum of $124.50, for balance due them as attorneys' fee for services rendered in five several actions at law brought by them as attorneys for Patterson against the insurance company.

Upon the payment of the money in court by the insurance company the complaint against it was dismissed and the cause proceeded to a trial before a jury on the issue between Davies & Davies and A. J. Patterson as to the attorneys' fee.

The facts developed on this issue were substantially as follows: On the 14th of November, Davies & Davies, hereafter called appellants, and A. J. Patterson, here-

after called appellee, entered into the following contract: "It is hereby agreed by and between A. J. Patterson and the firm of Davies & Davies, attorneys, that the said attorneys are to attend to the business of securing a settlement of the claim of said Patterson for payment of five insurance policies for damages on account of fire sustained to and on account of a fire November 2, 1916, by which the building and furniture of said Patterson were burned, situated on lot 10, block 146, in Hot Springs, Arkansas, for a fee of one hundred dollars to be paid by said Patterson whether suit is brought or not. If suit is brought and a recovery is had for an attorney's fee, it is agreed that the amount paid by the said Patterson shall be returned to said Patterson from any fee so recovered. If no fee is allowed by the court then said sum of $100 is to be kept by said Davies & Davies, and in that event shall be considered as payment in full for such services as shall be rendered by said Davies & Davies, on account of the fact that said Patterson shall have the costs of any such suit to pay, and shall not have recovered more than the insurance companies have offered to pay."

R. G. Davies' testimony tended to prove that the contract above contemplated the bringing of five suits against the several insurance companies for sums covered by their respective policies amounting in the aggregate to $7,000, provided the insurance companies had not settled within sixty days from the time they received the proof of loss. The proofs of loss were received by the companies about November 25. The appellant agreed with the several companies upon a settlement in which he was to receive in the aggregate the sum of $5,000, which sum was to be paid within sixty days from the receipt of the proof of loss. This agreement for settlement was made without the knowledge of the appellants and when R. G. Davies was informed of it by the appellee he protested against it and stated to the appellee that he was entitled to the benefit of his contract and that if he, appellee, had settled the lawsuits without the appellants' consent they were entitled to the same amounts that

they would have received if they had brought suit. Appellee replied that he had settled. Davies then asked him whether he was going to pay the fee or not. The appellee replied, "If they do not pay all the money in sixty days from the time we made that proof, why, go ahead and sue them." Davies wrote to the companies a letter to that effect on December 26, 1916.

Patterson was not living in Hot Springs but was there at the time when he gave Davies the directions to write the insurance companies.

On the 20th of January, 1917, appellants had received drafts from three of the companies covering the amounts as agreed upon between them and the appellee. Appellants wrote the appellee that they had received these checks but that the others had not arrived and that unless the checks of all five companies were turned over by the 22nd appellants would bring suit; that they had forwarded the checks received for payment but that the companies had refused settlement on the ground that the checks would have to be endorsed by the appellee. In the letter of appellants to appellee, appellants informed him that as the companies had refused to pay he could sue for the full amount. Among other things appellants wrote "if you do not want to sue them wire us as soon as this reaches you. We have prepared the complaints and will file them unless you refuse to permit us to bring suit according to our agreement." Appellants also wrote the appellee on the 25th of January, stating among other things that they had received four of the checks, and that one had not yet arrived. This letter informed the appellee that appellants had brought suit on all the policies for the full amount thereof and attorneys' fee; that they had cashed one of the checks for $678.04 and they were enclosing the rest. In this letter appellants among other things advised appellee that he should not receipt the insurance company in full but have it distinctly understood that the payment of the checks was only to go on the credit of the indebtedness as a whole. Appellants further stated, "The time elapsed before we acted and they

refused to pay some of the checks and one of them has not arrived yet." Other letters were written by appellants to the appellee all of which he acknowledged he received, in which appellants protested against the appellee accepting the amount of the checks and advised him if he did so that they would insist upon his liability to them the same as if they had pursued the litigation to the end and recovered the full amount for which they sued. In a letter of the 27th of January appellants wrote the appellee among other things as follows: "One of the checks still not turned over. Sent three to you by registered letter and cashed the other."

After introducing the above letters R. G. Davies testified among other things that what they stated in those letters was true. "We did not receive all the drafts before we brought the suits. We received three. The fourth was received on the 27th and the last one on the 30th of January. The suits were brought either on the 23rd or 24th." Davies further testified that after the suits had been brought that appellee demanded that he dismiss the same and stated that he would pay the $100 mentioned in the contract, but that the witness refused to accept that amount and insisted that appellee owed more than that.

Witness was asked how he arrived at $124 which he claimed, and answered that if he had maintained suits for $7,000 with 12 per cent. penalty added to that it would amount to $8,400, the total amount, and that they were entitled to at least 10 per cent., which would have left due them the sum of $124. As Patterson by his settlement had prevented witness from prosecuting the suits witness was entitled to the full amount of the fee he would have received. He admitted that he had received the sum of $678.04.

Appellee testified admitting that he entered into the contract with Davies and that he had agreed to settle with the companies for $5,000, and if the companies had not paid him within sixty days from the time they received the proofs of loss he expected the appellants to

sue them. But he denied that he ever authorized appellants to enter suit. He stated that appellants had collected $678 from the insurance companies and still held that amount, and therefore since appellants drew on witness for the sum of $124 he refused to pay the same and told the banker that he did not owe Davies anything.

There was much more testimony but the above is sufficient to test the correctness of the ruling of the court in instructing the jury to return a verdict in favor of the appellee.

WOOD, J., (after stating the facts). The orders of the court eliminating the insurance company from the case and requiring the appellants to be made parties and the interplea filed by appellants narrowed the issues to, and the cause progressed as if it were, a suit by appellants against the appellee for fees for services as attorneys.

Appellants contend that under their contract with appellee they were authorized to institute suit against the insurance companies, which they did, and that inasmuch as the appellee effected a settlement of these suits for a less amount than the sum sued for without the consent and over the protest of appellants, that they were entitled to the same fee that they would have recovered had the suits progressed to a successful termination in favor of the appellee for the full amount of his demand as made by those suits.

A correct decision of this issue involves a construction of the contract. The contract contemplated that appellants should attend to the matter of making the settlement of the controversy between the appellee and the insurance companies, and for these services the appellants were to be paid the sum of $100 at all events, whether the settlements were had with or without suit. But in the event of a suit appellants were to receive a contingent fee, the amount thereof being dependent upon a recovery in favor of the appellee in a greater sum than

that the insurance companies had offered to pay. If appellee did not recover by the suits more than the insurance companies had offered to pay then the appellants were to receive the sum of only $100 for their services in bringing suits and the appellee was to pay the costs.

Now, giving appellants' evidence the strongest probative value in favor of the appellants, it tends to prove that they were authorized by the appellee to institute the suits against the insurance companies for $7,000, which they did. That after these suits were instituted appellee without appellants' consent settled the same for the sum of $5,000. Assuming these facts to be true, the question of law, therefore, is: "Were appellants entitled to recover a greater sum than $100 as attorney's fee and the costs, which they paid, in connecetion with the suits?"

In *Davis* v. *Webber,* 66 Ark. 190, we held that "A stipulation, in a contract for an attorney's fee for prosecuting a suit, that the client shall not settle the suit without the attorney's consent is void as against public policy." See, in addition to the authorities there cited, 2nd Page on Contracts, sec. 775, and the cases in the note.

(1) Under our statutes an attorney has a lien for his fee which can not be defeated by any settlement of the parties litigant, before or after final judgment or final order. But an attorney has no right to compel his client to continue litigation and the client may dismiss or settle the cause of action without consulting his attorney. *St. L., I. M. & S. Ry. Co.* v. *Blaylock,* 117 Ark. 507; *St. L., I. M. & S. Ry. Co.* v. *Kirtley & Gulley,* 120 Ark. 389.

The contract between appellants and the appellee must be read in the light of the law and construed as though it contained a provision permitting the appellee to settle the suits at any time without consulting his attorneys, the appellants. The appellants, therefore, must be held to have contemplated, when they entered into the contract, that after the suits were instituted the appellee might settle the same and for a less sum than sued for and for a sum no greater than that which the insurance companies had offered to pay. Appellants must

be held to have known that if the appellee did thus settle the amount which he received in the settlement would represent the amount recovered by virtue of the suits the same as if they had been prosecuted to a final judgment in that sum.

(2) It follows that, since appellee recovered from the insurance companies less than the amount demanded by his suits, and less than the amount that the insurance companies offered to pay, the companies would not have been liable for attorneys' fees had the suits been prosecuted a final judgment. *Pacific Mutual Life Ins. Co.* v. *Carter,* 92 Ark. 378.

Therefore, under the express terms of the contract, appellants could not recover of the appellee more than the sum of $100 and the costs they had paid for him. The appellants were entitled to a judgment against the appellee for that sum and to have a lien declared on the funds in their hands for its payment. *Railway* v. *Blaylock, supra; Railway* v. *Kirtley & Gulley, supra.*

Appellants contend that the issues raised by the pleadings and the proof in this case have already been determined in their favor by the opinion of this court in the case of *Davies & Davies* v. *Patterson,* 132 Ark. 484. Appellants misapprehend the effect of the decision in that case. While the parties were the same and the same subject matter was brought under review, yet the issue in that case was entirely different from the case at bar. In that case Patterson filed a motion for a summary judgment against Davies & Davies asking that they be required to pay over $678, the funds in their hands, which he alleged they had collected. It appears that the above sum was collected on a policy of insurance under the same contract of employment as is in this suit.

In that case Davies & Davies in their response to the motion for summary judgment set up the contract and alleged substantially the same facts in response to the motion as they have alleged here in support of their contention, that they are entitled to a judgment for the full amount of the fees claimed by them.

That case was disposed of as if on demurrer to the response. In that case the opinion was concluded in the following language: "The answer herein stated facts which, if true, were sufficient to constitute a defense to the motion for a summary judgment. In all such cases the court should deny the motion and treat the proceedings as an ordinary action at law and transfer the same to the proper docket and allow it to take its regular course in such proceedings." We further said in the course of the opinion: "If the facts set forth in the answer of the defendants are true, they had a just and meritorious defense."

Treating the facts set up in response to the motion as true, we held that the court had no jurisdiction to render judgment against the attorneys on summary proceedings. But an action by clients under a special statute on summary motion to have attorneys pay over moneys collected by them is an entirely different proceeding and presents a wholly different issue from that of an action instituted by clients against their attorneys for money had and received by the attorneys in the regular course of the common law to recover fees for services rendered by them. Although the summary motion and the action at law may be between the same parties and concerning the same subject matter, it does not follow that facts which would constitute a good defense to summary motion to have attorneys pay over the moneys collected by them and which would defeat the jurisdiction of the court to render judgment on such motion, would also constitute a cause of action in favor of the attorneys for fees for services rendered.

It appears from the undisputed evidence in this cause that the appellants have collected and now have in their hands the sum of $678, funds belonging to the appellee. As this sum exceeds the amount of the fee and costs for which appellants were entitled to judgment, as above indicated, there was no prejudicial error in directing

a verdict and rendering judgment herein in appellee's favor.

Judgment affirmed.

HART and HUMPHREYS, JJ., dissenting.